## ERASTUS PHELPS *et al. versus* THOMAS SHELDON *et al.*

The defendants, by writing, " let out to the plaintiffs the great river feeder &c., at the price of &c. What is meant by the feeder, is, the dam, guard gate, culverts, excavation and embankments; in fact, every kind of work connected with fetching the water into the canal on said summit level;" but no time was fixed for performing the work, nor for making payments. It was *held*, that this was an entire contract, that it covered the whole work, and that it was not void for want of certainty.

If a party undertakes to perform an entire work at a stipulated price and fails to perform it, but receives the whole contract price, he can have no further claim on the ground of a *quantum meruit*, although the part performed is beneficial to the other party.

ASSUMPSIT. The case came before the Court upon a report of auditors ; which, it was agreed, should be considered as an award of arbitrators.

The auditors report, that they have viewed the action in two lights ; 1. as founded upon the contract set forth in the declaration ; and 2. as a claim for a *quantum meruit* for services performed.

The contract was as follows :— " Westfield, Nov. 25, 1826. We, Thomas Sheldon and Jarvis Hurd, hereby agree that we have let out to William May, Gurdon Pitcher, Erastus Phelps and Ebenezer H. Whiting, the great river feeder, so called, which is intended to supply the timber swamp summit with water, at the price of $ 17,918·86, reserving to ourselves the right to diminish said feeder one foot or to seven feet, and also to shorten the feeder at either end, in which case a deduction is to be made from the above amount in proportion to the amount of the deduction from the feeder. What is meant by the feeder is, the dam, guard gate, culverts, excavation and embankment; in fact, every kind of work connected with fetching the water into the canal on said summit level. All the work and materials are to be such as shall be approved of by the chief engineer, Davis Hurd, esquire. The dam to be of wood." This contract was signed by all the parties named in it, except Phelps. May, Pitcher, Phelps and Whiting were in copartnership in the business.

It was contended by the plaintiffs, that this instrument was merely an outline or memorandum of a more complete contract which the parties intended to have framed. The defendants contended that it was a complete contract.

Phelps<br>v.<br>Sheldon.

The plaintiffs commenced the work in the spring of 1827, and when the dam was about two thirds built, it was carried away by a freshet, in the latter part of August following. From this time the work seems to have been abandoned by the contractors, though May continued to do some work for a year or more afterwards.

The auditors were of opinion, that the writing was a substantial and binding contract, and that the plaintiffs had failed to perform it according to its terms, and therefore were not entitled to recover. The sum of $ 17,918·86, named in the contract, was the estimate of the work made by an engineer employed by the canal corporation, after deducting ten per cent.; and it was in evidence, that the defendants had paid for the work in its progress, more than that sum.

In case the opinion of the auditors respecting the validity of the written contract should not be deemed by the Court to be correct, they further report, under the claim to a *quantum meruit*, the following facts and opinions. The defendants paid to the orders of the plaintiffs in favor of subcontractors, the sum of $ 14,064·01. The amount of labor and materials furnished by the plaintiffs and not so paid for, was $ 3,414·52, on account of which the defendants paid them $ 3,235·73, leaving a balance of $ 178·79. The plaintiffs claim an allowance for the part of the dam which remained after the freshet, and which was used by the defendants ; and under this view of the case the auditors allow for it the sum of $ 500 ; making the whole balance due to the plaintiffs, $ 678·79. Besides $ 17,299·74 paid as above to the plaintiffs, the defendants have since paid to other persons for work on the feeder and dam, $ 2,683·15, making the amount of payments by the defendants for the whole work, $ 19,982·89.

*Boise*, for the plaintiffs, contended that the written contract was imperfect, inasmuch as it fixed no time for performing the work, nor for making payment ; that it stipulated for nothing more than the law would imply ; and that it had been

*Sept.* 27*th*.

rescinded ; and for these reasons the plaintiffs might resort to a *quantum meruit* ; and that as the remains of the dam had been of use to the defendants, the plaintiffs were entitled to recover the balance stated by the auditors in their favor, which includes $ 500 on account of the dam.  *Gibbs* v *Bryant*, 1 Pick. 118 ; Bull. N. P. 139 ; *Perkins* v. *Hart*, 11 Wheat. 237 ; *Taft* v. *Montague*, 14 Mass. R. 282 ; *Faxon* v. *Mansfield*, 2 Mass. R. 147 ; *Hayward* v. *Leonard*, 7 Pick. 181 ; *Smith* v. *Meetinghouse in Lowell*, 8 Pick 178 ; 2 Phil. Evid. (Boston edit. 1822,) 83, note ; *Jewell* v. *Schroeppel*, 4 Cowen, 564.

*W. G. Bates* for the defendants.

*Sept. 29th.*  SHAW, C. J. delivered the opinion of the Court.  It appears by the report of the auditors, that all the work now sued for was done in pursuance of an express contract, by which the plaintiffs agreed to construct the feeder for the canal, therein described, for a sum specified ; and the contract itself states what was meant to be included, namely, "the dam, guard gate, culverts, excavation and embankment, in fact every kind of work connected with fetching the water into the canal."

Nothing is shown, we think, to take the case out of the operation of the very familiar rule, that where the parties have made a contract for themselves covering the whole subject matter, no promise is implied by law.

By the report it appears, that the defendants have paid to the plaintiffs the whole amount of the contract price, although the plaintiffs have failed to perform the whole work contracted to be done.  This precludes the operation of another rule relied upon, viz. that where the party undertakes to perform an entire work, at a stipulated price, and fails on his part to perform it, so that by the rules of law he is not in a condition to claim payment according to the contract, still if he has done that which is beneficial to the other party, he shall be entitled to a proportionable part of the stipulated compensation.  *Hayward* v. *Leonard*, 7 Pick. 181. They cannot avail themselves of the benefit of this modern equitable rule, because, although they have fallen far short of performing the whole work, they have received the whole

Phelps<br>v.<br>Sheldon.

amount of the stipulated compensation. It is extremely probable that it was a disastrous undertaking, and a most unfortunate contract for the plaintiffs, and it may have been so for the defendants, if they themselves were contractors. But these losses must have arisen from mistaken estimates, from erroneous information, or from unforeseen casualties, and these are risks which the plaintiffs, by the terms of their contract, necessarily took, and it would be equally contrary to the rules of law, and of equity, when the loss has happened, to throw it upon the other party.

It is suggested that the defendants interfered to prevent the plaintiffs from performing their part of the contract. If this were so, and if this was a breach of contract, on the part of the defendants, the plaintiffs might have some other remedy, but it would not remit them to their right to recover a *quantum meruit.*

On the whole, the Court are of opinion, that the contract was entire and covered the whole work ; that it was not void for uncertainty ; that a sum having been paid, to the amount of the whole contract price, although the work as done might be beneficial to the defendants, yet it was paid for and furnishes no ground for a further claim.

*Auditor's report confirmed and plaintiffs nonsuit.*